**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------------X
SECURITIES & EXCHANGE COMMISSION,    :

                                                :

                        Plaintiffs,     :           03 Civ. 813 (RMB)

                                                :

       -against-                  :       **DECISION AND ORDER**

                                                :

TODD M. EBERHARD, PARK SOUTH SECURITIES,    :
LLC, and EBERHARD INVESTMENT ASSOCIATES,    :
INC.,                                           :

                                                  :

                        Defendants.    :
---------------------------------------------------------------------------X

## I.    Background

On March 22, 2005, this Court endorsed a Stipulation and Order formalizing a settlement agreement ("Settlement") between Aaron R. Marcu (as Receiver of the Estate of Todd Eberhard), the Securities and Exchange Commission, and the SIPA Trustees for Park South Securities, LLC, Eberhard Investment Associates, Inc., and Clearing Services of America, Inc. (collectively, the "Receiver"), and intervenor Kristen Eberhard, who is defendant Todd Eberhard's wife ("Ms. Eberhard"), resolving a dispute over Ms. Eberhard's interest in Apartment 9-A at the Empire Condominium, 188 East 78th Street, New York, New York and a basement storage unit #17 at the Empire Condominium (together, the "Apartment"). (Settlement, dated March 22, 2005.)[1] The Settlement provided, inter alia, that the Apartment would be sold and Ms. Eberhard would receive an agreed-upon percentage of the "adjusted net proceeds" from the sale. (Settlement ¶ 3.) The "adjusted net proceeds" were defined as the "gross purchase price" minus certain charges and expenses, including "50 percent of all other reasonable closing costs." (Settlement ¶ 3(B)(vii).)

The Settlement did not (expressly) provide for the payment of any tax liens filed by New

---

[1] Ms. Eberhard was permitted to intervene in this receivership proceeding pursuant to an order, dated December 9, 2003. "'A party contracting with the receiver becomes a quasi party instead of a stranger to the record, and subjects himself for the purposes of the contract to the orders of the court.'" F.D.I.C. v. Bernstein, 786 F. Supp. 170, 178 (E.D.N.Y. 1992) (citation omitted).

York State with respect to the Apartment.[2] (Settlement ¶3.) The Settlement contained a merger clause, as follows: "[t]his Stipulation and Order embodies the complete agreement and understanding among the Parties with respect to the subject matter hereof and supersedes any prior understandings, agreements, or representations, written or oral, which may have related to the subject matter hereof in any way." (Settlement ¶ 8(B).)

On April 25, and April 26, 2005, respectively, the Receiver and Ms. Eberhard executed a "Title Affidavit" in connection with the sale of the Apartment which stated, among other things, that "[t]here are no judgments against T. Eberhard or K. Eberhard, except one (1) Parking Violation Bureau judgment, which judgment has been paid . . . ." (Receiver's May 27, 2005 Letter, Ex. E: Title Affidavit ¶ 8.)

The Apartment closing took place on May 11, 2005; the total sales price was $2,872,500, from which Ms. Eberhard would receive $144,918.06 under the Settlement. Two days later, however, on or about May 13, 2005, it appeared that four New York State tax warrants, dated December 3, 2002 through January 21, 2005, and totaling $315,152.48 (exclusive of penalties and interest) had been filed against the Apartment with the New York County Clerk ("Tax Liens"). At the Receiver's request, Ms. Eberhard's counsel, Hoffman & Pollok LLP, agreed to hold in escrow $144,918.06 payable to Ms. Eberhard under the Settlement. Under a Stipulation, dated May 26, 2005, Ms. Eberhard has received $100,000 of the $144,918.06 net proceeds of the sale, and $44,918.06 remains in escrow.[3]

At a conference, dated December 14, 2005, to expedite the Settlement, the Court granted

---

[2] As set forth below, it appears that such liens in the amount of $315,152.48 were filed on or about December 3, 2002 through January 21, 2005.

[3] Ms. Eberhard's counsel, John L. Pollok, Esq. and William A. Rome, Esq. of the firm Hoffman & Pollok LLP, have asked to be relieved. (See Hoffman & Pollok Letter to the Court, dated December 15, 2005 (seeking to withdraw after learning "that Ms. Eberhard, in a claim brought . . . with the Departmental Disciplinary Committee, has claimed, albeit falsely, that Hoffman & Pollok . . . has converted" the proceeds that are now in escrow).)

the Receiver's request to depose Ms. Eberhard with respect to, among other things, her awareness

of the Tax Liens at the time she signed the Title Affidavit. At her deposition, held that day, Ms.

Eberhard testified that, among other things, she never saw "any notice prior to [the Apartment]

closing from New York State or the Internal Revenue Service making an assertion about how

much money Todd Eberhard owed in taxes . . . ." (Deposition of Kristen Eberhard, dated Dec.

14, 2005, at 18-19.)[4]

The Receiver and Ms. Eberhard have submitted a series of letter briefs disputing who

bears the risk of the Tax Liens. (See Receiver's Letters to the Court, dated May 19, May 27, and

December 21, 2005; Ms. Eberhard's Letters to the Court, dated May 17, May 24, May 27, May

31, and December 21, 2005.) The Receiver argues that (1) under ¶ 3(B)(vii) of the Settlement,

the Tax Liens should be considered part of the "reasonable closing costs" for which Ms. Eberhard

is responsible; (2) Ms. Eberhard's "apparent knowledge of the tax liens, and apparent

untruthfulness in the Title Affidavit, weigh against awarding her any equitable relief, such as a

declaratory judgment or an injunction of any sort"; and (3) the Settlement's merger clause would

not "bar consideration of extrinsic evidence" because Ms. Eberhard's Title Affidavit was

executed after the Settlement and because the term "reasonable closing costs" is ambiguous.

(See Receiver's Letters to the Court, dated May 19, May 27, and December 21, 2005.)

Ms. Eberhard counters that: (1) the Settlement is unambiguous, as the phrase "reasonable

closing costs" does not include tax liens -- "a closing cost is a fee for service that is provided,

while a tax warrant is evidence of a debt"; (2) "[t]here is a great distinction between notices and

or correspondence from taxation authorities and receiving liens and or warrants," as "liens and

warrants are delivered by registered mail," and Ms. Eberhard never testified to "seeing or

---

[4] Compare Ms. Eberhard's testimony at an earlier deposition, dated October 22, 2003:
Q: "Did you ever become award of any claim that Todd did not pay all of his taxes on his
income?"; A: "I have been made aware of that . . . [through] [r]eceiving tax bills . . . [f]rom New
York State and the IRS." (Deposition of Kristen Eberhard, dated Oct. 22, 2003, at 145.)

receiving any warrants and or tax liens"; and (3) the merger clause in the Settlement "bars any reliance on . . . extrinsic proof" in construing the Settlement. (Ms. Eberhard's Letters to the Court, dated May 17, May 24, May 27, May 31, and December 21, 2005.)

At a conference with the Court on December 14, 2005, the parties agreed that the Court should construe the parties' papers as cross-motions for summary judgment. (Status Conference, dated Dec. 14, 2005.)

**For the reasons set forth below, the Court grants Ms. Eberhard's motion for summary judgment and determines that she, rather than the Receiver, is entitled to the $44,918.06 held in escrow, and denies the Receiver's motion for summary judgment.**

## II. Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); BBS Norwalk One, Inc. v. Raccolta, Inc., 117 F.3d 674, 676 (2d Cir. 1997). The Court must "constru[e] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor." Boguslavsky v. Kaplan, 159 F.3d 715, 719 (2d Cir. 1998).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation marks and citations omitted); BBS, 117 F.3d at 676. A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When cross-motions for summary judgment are made, the standard is the same as that for

individual motions.  See Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).  The

court must consider each motion independently of the other.  Morales, 249 F.3d at 121.[5]

## III.   Analysis

### A.   The Settlement is Unambiguous

The Court finds that the term "reasonable closing costs" as used in the Settlement is

unambiguous and cannot be construed to hold Ms. Eberhard responsible for the Tax Liens.[6]  The

Settlement contains no provision expressly holding Ms. Eberhard liable for the Tax Liens.  And,

"closing costs" are expenses involved in effectuating the transfer of, in this case, realty, and do

not include unrelated antecedent debts.  See Black's Law Dictionary (6th ed. 1990) (defining

"closing costs" in a real estate transaction as "[e]xpenses which must be paid in addition to the

purchase price"); Dictionary of Finance and Investment Terms 116 (6th ed. 2002) (defining

"closing costs" in a real estate transaction as "expenses involved in transferring real estate from a

seller to a buyer, among them lawyer's fees, survey charges, title searches and insurance, and fees

to file deeds and mortgages"); see also Emerald Investors Trust v. Gaunt Parsippany Partners,

No. 02-CV-1939, 2005 WL 1705779, at *9 (D.N.J. July 21, 2005) (defining "closing costs" using

---

[5] In equity receivership, the "court is . . .  empowered to determine in a summary
proceeding the rights and obligations of the parties to the contract [with the receiver], particularly
when the issues presented involve a simple matter of contract interpretation."  F.D.I.C. v.
Bernstein, 786 F. Supp. 170, 178 (E.D.N.Y. 1992).

[6] "Where . . . the contract is clear and unambiguous on its face, the intent of the parties
must be gleaned from within the four corners of the instrument, and not from extrinsic evidence."
Rainbow v. Swisher, 72 N.Y.2d 106, 109, 531 N.Y.S.2d 775 (1988).  "An ambiguity exists
where the terms of a contract could suggest 'more than one meaning when viewed objectively by
a reasonably intelligent person who has examined the context of the entire integrated agreement
and who is cognizant of the customs, practices, usages and terminology as generally understood
in the particular trade or business.'"  Alexander & Alexander Servs., Inc. v. Certain Underwriters
at Lloyd's, 136 F.3d 82, 86 (2d Cir. 1998).  Id. (citation omitted).
       "[T]he parties' briefs assume that New York law controls this issue, and such implied
consent . . . is sufficient to establish choice of law."  Krumme v. WestPoint Stevens, Inc., 238
F.3d 133, 138 (2d Cir. 2000) (citation and internal quotation marks omitted).

above dictionary definitions).[7]

Having found the Settlement to be unambiguous on its face, the Court may not resort to extrinsic evidence to aid construction. See, e.g., Md. Cas. Co. v. W.R. Grace & Co., 23 F.3d 617, 625 (2d Cir. 1993) ("Interpretation of unambiguous contract language does not bring extrinsic evidence into play.").

**B.      Unclean Hands**

No authority is provided for the proposition that the defense of "unclean hands" -- even assuming it were established -- could provide a basis for considering extrinsic evidence, or that, absent a claim of fraud, Ms. Eberhard's alleged misrepresentation in the Title Affidavit should affect this contract dispute. Unclean hands can only be asserted with respect to equitable -- not legal -- claims. "A declaratory judgment action is a statutory creation, and by its nature is neither fish nor fowl, neither legal nor equitable. Where, as here, such an action has required classification, the courts have looked to the basic nature of the suit in which the issues involved would have arisen if Congress had not created the Declaratory Judgment Act, 28 U.S.C.§§ 2201, 2202." Am. Safety Equip. Co. v. J.P. Maguire & Co., 391 F.2d 821, 824 (2d Cir. 1968); accord Gulf Life Ins. Co. v. Arnold, 809 F.2d 1520, 1523 (11th Cir. 1987).

The Court concludes that Ms. Eberhard's claim (regarding interpretation of a valid contract) sounds in breach of contract, and is a legal claim. See also VT, Inc. v. GEICO Ins. Co., No. Civ. A. 3:03-CV-0522-P, 2004 WL 1373132, at *10 (N.D. Tex. June 16, 2004) ("Because a declaratory judgment action is not an equitable proceeding, the unclean hands defense may not be asserted." (applying Texas state law)).

---

[7] Dictionary definitions may be employed to determine the plain meaning of contract terms. See, e.g., R/S Assocs. v. New York Job Dev. Auth., 98 N.Y.2d 29, 32-33, 744 N.Y.S.2d 358, 360 (2002); DDS Partners, LLC v. Celenza, 6 A.D.3d 347, 348, 775 N.Y.S.2d 319, 321 (1st Dep't 2004).

## IV. Conclusion and Order

For the reasons set forth above, the Court grants Kristen Eberhard's motion for summary judgment and determines that she, rather than the Receiver, is entitled to the $44,918.06 held in escrow, and denies the Receiver's motion for summary judgment.

Dated: New York, New York
January 3, 2006



**RICHARD M. BERMAN, U.S.D.J.**

USDC SDNY

DATE FILED: 1/3/06